# FREEMAN, NOOTER & GINSBERG
## ATTORNEYS AT LAW

LOUIS M. FREEMAN  
THOMAS H. NOOTER  
LEE A. GINSBERG  
⎯⎯⎯

NADJIA LIMANI  
OF COUNSEL  
⎯⎯⎯  
CHARLENE RAMOS  
OFFICE MANAGER

75 MAIDEN LANE  
SUITE 503  
NEW YORK, N.Y. 10038  
⎯⎯⎯

(212) 608-0808  
TELECOPIER (212) 962-9696  
E-MAIL: FNGLAW@AOL.COM  
WWW.FNGLAW.COM

April 15, 2020

BY ECF  
Honorable Kiyo A. Matsumoto  
United States District Judge  
United States Courthouse  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re: *United States v. Eric Sedge*  
16 CR 537 (KAM)

Dear Judge Matsumoto:

On behalf of Eric Sedge, we seek emergency relief from the dangerous health conditions under which he is being detained at FCI Danbury. As the Court may be aware, on April 3, 2020, the Attorney General issued a memorandum providing guidance to the Director of the Bureau of Prisons regarding the increase of the use of home confinement at institutions most affected by COVID-19. FCI Danbury is one such institution. *See* 4/3/2020 AG Memorandum, https://www.justice.gov/file/1266661/download. "As you know, we are experiencing significant levels of infection at several of our facilities, including FCI Oakdale, FCI Danbury, and FCI Elkton. We have to move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions." *Id.* at 1. FCI Danbury currently has the sixth highest rate of positive cases in the BOP system. *COVID-19 Cases*, www.bop.gov/coronavirus.

Mr. Sedge is an appropriate candidate for home confinement based on the criteria established by the Attorney General in his March 26, 2020 memorandum to the Director of the Bureau of Prisons:

1) Age and vulnerability of the inmate;
2) Security level of the facility currently holding the inmate;
3) Inmate's conduct in prison;
4) Inmate's PATTER score;
5) Inmate's Re-entry Plan; and
6) Inmate's crime of convictions and assessment of danger posed by the inmate to the community.

3/26/20 AG Memorandum, https://www.justice.gov/file/1262731/download.

1

Mr. Sedge is fifty-two years old and has a family history of heart and respiratory issues. He has been in federal custody since June 2, 2016.[1] Mr. Sedge was sentenced to a term of seventy-two months and five years' supervised release for a non-violent drug offense. He has a PATTERN score of LOW, is currently in RDAP and has had no infractions or tickets while in BOP custody. Mr. Sedge's re-entry plan includes returning to his parent's residence in Great Neck, Long Island where he will have his own room and be able to self-quarantine if necessary. He is a low recidivism risk given his age and his five-year term of supervised release.

Given Mr. Sedge's age and family health history and the dangerous rate of the increase in positive cases at FCI Danbury, we respectfully move for a reduction of his sentence to time served based on compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) with a period of home confinement as a condition of his supervised release. Such a decision would be consistent with the 3553(a) sentencing factors and applicable policy statements issued by the Sentencing Commission. Mr. Sedge has served the majority of a sentence that balances the seriousness of his criminal conduct with his acceptance of responsibility. His excellent record while incarcerated, which we highlighted when Mr. Sedge was sentenced,[2] reflects an individual who is not a danger to the community.

However, should the Court find that Mr. Sedge has not proven an exception to the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) or that he is otherwise ineligible for compassionate release, we request that the Court 1) order the Bureau of Prisons to rule on our April 10, 2020 request as soon as possible and 2) recommend to the Bureau of Prisons that Mr. Sedge serve the remainder of his sentence on home confinement pursuant to the 3/26/2020 and 4/3/2020 memorandums issued by the Attorney General and the expansion of home confinement eligibility authorized by the CARES Act.[3]

**A. Mr. Sedge's Request to Warden D.K. Williams**

On April 10, 2020 undersigned counsel wrote via electronic mail to Warden D.K. Williams, Regional Director David Paul and BOP counsel for the North East region Les Owen requesting the early release of Mr. Sedge to home confinement pursuant to 18 U.S.C. § 3624, the CARES Act and the above-referenced 3/26/2020 and 4/3/2020 Attorney General memorandums. We have not received confirmation of the e-mail by the Bureau of Prisons.

---

[1] As will be detailed *infra*, Mr. Sedge has been incarcerated since March 13, 2016 when he was arrested and detained at the Nassau County Correctional Center.

[2] To remind the Court, while at the MDC, Mr. Sedge obtained many course certificates, including three from the Columbia University Center of Justice program, assisted inmates as a tutor, taught several certificate courses, and worked in the kitchen preparing meals for both inmates and staff.

[3] "The CARES Act, which was signed into law on March 27, 2020, permits the BOP Director in certain circumstances to "lengthen the maximum amount of time" for which home confinement is authorized. CARES Act, P.L. 116-136, § 12003(b)(2) (2020)." Congressional Research Service, "Federal Prisoners and COVID-19: Background and Authorities to Grant Release," page 13, n. 73, https://crsreports.congress.gov/product/pdf/R/R46297 (updated April 2, 2020). The Attorney General cited the CARES Act in advocating for the increased use of home confinement by the BOP. "In addition, the CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons." 4/4/2020 AG Memorandum, https://www.justice.gov/file/1266661/download.

Pursuant to the First Step Act, this Court has the authority to reduce Mr. Sedge's sentence to time served.

> [U]pon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

U.S.S.G. § 1B1.13 Application Note 1 (2018), provides that "extraordinary and compelling reasons" include (A) the medical condition of the defendant, (B) the age of the defendant, (C) his or her family circumstances, and (D) any other extraordinary and compelling reason that the Director of the Bureau of Prisons determines. Many courts have therefore applied the First Step Act in granting compassionate release and reducing sentences for defendants based on the extraordinary and compelling reasons of inmates' medical conditions and the severe health risks posed by the coronavirus in confinement.[4]

Under ordinary circumstances, a defendant is required to wait thirty days from the Warden's receipt of a request for a reduction of sentence based on extraordinary and compelling circumstances before they are permitted to petition the court for such relief. However, as the Second Circuit stated in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019),

> Even where exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute. The Supreme Court itself has recognized exceptions to the exhaustion requirement under 'three broad sets of circumstances.' *McCarthy*, 503 U.S. at 146. First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue. *Id.* at 148. …The Supreme Court has further stated that exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief. *See McCarthy*, 503 U.S. at 147. Finally, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice. *McCarthy*, 503 U.S. at 146-47.

---

[4] *See, e.g.*, *United States v. Resnick*, No. 14 Cr. 810 (CM) (S.D.N.Y. Apr. 2, 2020), D.E. 461; *United States v. Perez*, No. 17 Cr. 513 (AT) (S.D.N.Y. Apr. 1, 2020), D.E. 98; United States v. Dana, No. 14 Cr. 405 (JMF) (S.D.N.Y. Mar. 31, 2020), D.E. 108; *United States v. Campagna*, No. 16 Cr. 78 (LGS), 2020 WL 1489829, at *1 (S.D.N.Y. Mar. 27, 2020); *United States v. Marin*, No. 15 Cr. 252 (PKC) (E.D.N.Y. Mar. 30, 2020), D.E. 1325–26; *see also United States v. Edwards*, No. 17 Cr. 3 (NKM), (Apr. 2, 2020), D.E. 134; *United States v. Hernandez*, No. 18 Cr. 20474 (CMA) (S.D. Fla. Apr. 2, 2020), D.E. 42; *United States v. Williams*, No. 04 Cr. 95 (MCR) (N.D. Fla. Apr. 1, 2020), D.E. No. 91; *United States v. Rodriguez*, No. 03 Cr. 271 (AB) (E.D. Pa. Apr. 1, 2020), D.E. 135; *United States v. Muniz*, No. 09 Cr. 199 (KPE) (S.D. Tex. Mar. 30, 2020), D.E. 578; *United States v. Powell*, No. 94 Cr. 316 (ESH) (D.D.C. Mar. 27, 2020), D.E. 97; *United States v. Gonzalez*, No. 18 Cr. 232 (TOR) (E.D. Wa. Mar. 25, 2020), D.E. 834; *United States v. Copeland*, No. 05 Cr. 135 (DCN) (D.S.C. Mar. 24, 2020), D.E. 662 and *United States v. Huneeus*, No. 19 Cr. 10117 (IT), (D. Mass. Mar. 17, 2020), D.E. 642.

*Id.* at 118-19.

In *United States v. Perez*, No. 17 Cr. 513, D.E. 98 at 4, Judge Torres found that all three exceptions applied where an inmate at the MDC moved for a reduction of his term of imprisonment under 18 U.S.C. 3582(c)(1)(A) having only three weeks left on his sentence. "Requiring exhaustion, therefore, would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are 'extraordinary and compelling.' Accordingly, the Court holds that Perez's undisputed fragile health, combined with the high risk of contracting COVID-19 in the MDC, justifies waiver of the exhaustion requirement." *Id*. at 6. As will be detailed below, the situation at FCI Danbury is worsening by the day. Any additional time restraint on Mr. Sedge's application for a reduction in his sentence is potentially life-threatening and therefore unduly prejudicial. Accordingly, the Court is authorized to rule on this application without requiring Mr. Sedge to exhaust his administrative remedies, i.e. wait until May 10, 2020, thirty days from the date of our letter to Warden Williams, to rule on this application.

B. **COVID-19 Poses Physical Risks to Eric Sedge as an FCI Danbury Inmate**

As is apparent from the data relating to the number of positive cases in the BOP system, , *see* Federal Defenders' chart *infra*, conditions of confinement create an optimal environment for the transmission of contagious disease. S*ee,* Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910; *see also,* "*An Epicenter of the Pandemic Will Be Jails and Prisons, If Inaction Continues,*" The New York Times (Mar. 16, 2020), https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings." *See,* "*Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States,*" March 2, 2020, https://bit.ly/2W9V6oS.

As of today's date, there are thirty-seven inmates and thirty-two staff members who have tested positive at FCI Danbury.[5] The BOP is not releasing data regarding how many tests have been given at each institution. Assuming only symptomatic individuals are being assessed for testing, as long as the BOP fails to test all inmates and staff, including symptomatic and asymptomatic individuals, the numbers of inmates and staff that test positive will remain low. These numbers are dangerously deceiving. One may be asymptomatic and be infected and infect others. Indeed, Dr. Anthony Fauci stated that perhaps as many as fifty percent of those infected are asymptomatic. *See,* "*As many as half of those with the coronavirus could be asymptomatic, Fauci says,*" The New York Times (April 5, 2020), https://www.nytimes.com/2020/04/05/world/coronavirus-live-news-updates.html#link-327dd1e4.

---

[5] Number of positive cases obtained from www.bop.gov/coronavirus.

As of April 13th, the BOP reported 589 cases (388 inmates and 201 staff),[6] an increase from 314 total cases the prior week. As the following chart indicates,[7] the number of positive cases, is increasing exponentially on a daily basis:



Chart obtained from Federal Defenders' home page, www.federaldefendersny.org. One shudders to imagine what the numbers will look like at the end of this week as the number of positive cases continues to rise. Mr. Sedge's request for relief is reasonable and necessary in light of the exceptionally dangerous conditions at FCI Danbury and the BOP's demonstrated inability to safeguard inmates from this potentially lethal virus.

To be clear, Mr. Sedge and all inmates at FCI Danbury are not able to utilize the majority of the safe practices recommended by the CDC to keep individuals safe from COVID-19. Per the CDC, everyone should 1) clean their hands often, 2) avoid close contact, 3) cover their mouths and noses with a cloth face cover when around others, 4) cover coughs and sneezes and 5) clean and disinfect frequently touched surfaces daily. *See*, Centers for Disease Control and Prevention, "*How to Protect Yourself and Others*," https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last visited April 8, 2020).

Mr. Sedge is not able to properly clean his hands often, avoid close contact with others or clean and disinfect frequently touched surfaces. "Currently, the BOP has enacted a national 14-day action plan to increase social distancing in the facilities. Specifically, inmates in every

---

[6] *Id*.
[7] Per the Federal Defenders' website, this chart was created with "numbers obtained from www.bop.gov/coronavirus on a daily basis. Media has reported that this website may understate the number that have tested positive. here is good reason to believe that the numbers reported by the BOP understate the actual number of tested-positive cases. *Compare* M. Licon-Vitale, MCC Warden, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/bop/MDC_20200407_042057.pdf (3 positive inmates at MDC Brooklyn) *with COVID-19 Cases* Federal Bureau of Prisons (Apr. 7, 2020) *at* www.bop.gov/coronavirus (2 positive inmates at MDC Brooklyn)." Homepage, https://federaldefendersny.org.

institution will be secured in their assigned cells." M. Licon-Vitale, MCC Warden, and D. Edge, MDC Warden, *Response to EDNY Administrative Order 2020-14* (Apr. 7, 2020) *at* https://www.nyed.uscourts.gov/pub/ bop/MDC_20200407_042057.pdf. The nature of incarceration makes avoiding close contact with others/social distancing impossible. Inmates share toilets, sinks, showers and other common areas. Mr. Sedge informs counsel that while he is not locked in his cell, his unit of approximately 85 inmates is locked in and because inmates have been provided with additional phone minutes this month due to the pandemic, there is crowding around the phone area.

In addition, communal areas and devices, including phones, touched by virtually every inmate in the unit, are seldom, if adequately, disinfected. Disinfectant cleaning supplies are extremely scarce, effectively prohibiting Mr. Sedge from practicing the personal hygiene recommended to minimize the risk of infection. BOP restrictions prevent disinfectants containing alcohol, the only effective cleanser for this contagion. *See,* ABC News, "*Despite corona virus warnings, federal Bureau of Prisons still transporting inmates: Sources*," (March 23, 2020) https://abcnews.go.com/Health/warnings-bureau-prisonstransportinginmatessources/story?id= 69747416 ("The BOP is running on empty with hand sanitizer, soap and masks, sources said, adding that the BOP doesn't have the ability to order more due to backorder."). Accordingly, because the inmates' sinks are not properly disinfected, they are not effectively cleaning their hands often.

As long as these conditions are present and testing is minimal, COVID-19 will continue to spread at FCI Danbury, putting each inmate and staff member at risk. As of today, there have been fourteen inmate deaths nationwide. *Press Releases*, https://www.bop.gov/resources/press_releases.jsp. As we are all now well aware, this rampant virus does not discriminate. However, inmates in densely populated jails with inadequate and mediocre medical care and safeguards have a far greater chance of infection and will become victims in short order.

While we do not claim that early release guarantees that Mr. Sedge would be immune from contracting the virus. But he would have a fighting chance to protect himself by self-quarantining in a private residence where he would have access to effective alcohol-based disinfectant; where he would not be housed with innumerable people who have no independent ability to self-quarantine or engage in recommended social distancing; where he could avail himself of masks, gloves and other safeguards, including the opportunity to be tested and access medical care.

"The Honorable Lorna G. Schofield recently granted an application for sentence reduction under § 3582(c) under similar circumstances. *See United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Judge Schofield approved the request of a defendant confined to the Brooklyn Residential Reentry Center (the "RCC") stating that his 'compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self- care within the environment of the RCC.' *Id.* at *3 (citing U.S.S.G. § 1B1.13 comment. n.1(A)). The same justifications apply here." *Perez*, at 7.

# CONCLUSION

To quote the Honorable Jesse M. Furman:

> The country faces unprecedented challenges from the novel Coronavirus ("COVID-19") pandemic. Those detained in jails and prisons face particularly grave danger... Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible… [T]here are many cases where temporary

*United States v. Nkanga*, 18 Cr. 713 (JMF), D.E. 87 at 1, 2 (Mar. 31, 2020 S.D.N.Y.) (internal citations omitted) (Court 'powerless' to grant temporary release for sentenced inmate.).

Because of the emergent and dangerous COVID-19 outbreak and Mr. Sedge's age and family health history, we respectfully request that the Court reduce Mr. Sedge's sentence to time served and order his immediate release. In making this request, we ask the Court to consider the guidance promulgated by the Attorney General to the Director of the BOP, specifically as it refers to FCI Danbury and the fact the Mr. Sedge has not received credit for all of his incarceration related to this matter[8] and for his participation in the RDAP program. Such a decision would be consistent with the 3553(a) sentencing factors for the reasons stated *supra*. However, should the Court determine Mr. Sedge is not entitled to an exception of the exhaustion requirements or is otherwise not entitled to compassionate release, we respectfully request that the Court 1) order the Bureau of Prisons to rule on our April 10, 2020 request as soon as possible and 2) recommend to the Bureau of Prisons that Mr. Sedge serve the remainder of his sentence on home confinement pursuant to the 3/26/20 and 4/2/20 memorandums issued by the Attorney General and the expansion of home confinement eligibility authorized by the CARES Act.

Extraordinary and potentially fatal circumstances require swift and uncommon action. Inmates at FCI Danbury inmates are testing positive for COVID-19, others will get sick, and others may die. We have a professional responsibility to safeguard their health and well-being.

---

[8] On May 29, 2019, Mr. Sedge was sentenced by Your Honor to 72 months' incarceration with credit for time served from June 2, 2016 through May 29, 2019 and with a recommendation for placement in the RDAP (Residential Drug Abuse Program) if deemed appropriate by the BOP. Mr. Sedge advised counsel that he arrived at FCI Danbury on or around September 19, 2019 and was placed in a RDAP program starting November 4, 2019 and ending August 4, 2020. He was due to receive six months of jail credit for his completion of the program moving his release date from June 25, 2021 to January 30, 2021. However, in February of this year, Mr. Sedge advised counsel that the RDAP program had been shut down due to disciplinary issues (unrelated to his participation) caused by inmates participating in the program. Accordingly, Mr. Sedge was not able to complete the program or receive the six-month credit. His current release date has been set as March 7, 2021.

Not only is Mr. Sedge not receiving credit for his participation in the RDAP program, additionally, he has not received credit for the time he was incarcerated in Nassau County relating to the charges for which he pled guilty before this Court. More specifically, on March 13, 2016, Mr. Sedge was arrested by local authorities in Nassau County (for conduct which was ultimately incorporated into his federal charges) and housed at the Nassau County Correctional Center. On June 2, 2016, he was arrested on federal charges in this matter and transferred to the MDC in Brooklyn. According to the BOP's computation data sheet (attached as *Exhibit A*), he received credit from March 13, 2016 through March 30, 2016 but not for April 1, 2016 through June 1, 2016. He was not prosecuted by New York State for this arrest, and therefore the time period from April 1, 2016 through June 1, 2016 has not been credited to any other sentence.

For the above-stated reasons, we urge the Court to grant the relief requested for Eric Sedge. Your consideration is greatly appreciated.

Respectfully submitted,

/s/ Louis M. Freeman
Louis M. Freeman

cc: AUSA Michael Keilty

8