

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| AAS:MTK | *271 Cadman Plaza East* |
| F. #2016R00826 | *Brooklyn, New York 11201* |

April 16, 2020

<u>By Email and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Eric Sedge
                  <u>Criminal Docket No. 16-537 (KAM)</u>

Dear Judge Matsumoto:

      The government respectfully submits this letter in response to the defendant Eric Sedge's ("Sedge" or the "defendant") motion for a modification of an imposed term of imprisonment, pursuant to Title 18, United States Code, Section 3582(c)(1)(A)(i), filed on April 15, 2020 (the "motion" or "Def. Mot."). In sum and substance, the defendant seeks a reduction of his 72-month sentence due to the COVID-19 coronavirus pandemic. For the reasons set forth below, the motion should be denied.

    I.    <u>Background</u>

      On March 13, 2016, Nassau County police responded to a report of a male asleep behind the wheel of a vehicle in New Hyde Park, New York. Upon arriving at the scene, officers discovered a disabled vehicle positioned in the middle of the roadway with the defendant asleep behind the wheel. A check of Department of Motor Vehicles records revealed that the defendant was driving with a suspended license. The defendant was placed under arrest at the scene. Officers were unable to move the defendant's disabled vehicle from the roadway and called for a towing asset to assist in impounding the vehicle. Prior to the car being towed, officers conducted an inventory inspection of the defendant's vehicle. During the search, officers discovered a black backpack containing approximately 2 pounds of methamphetamine, a scale, and $15,568 in United States Currency.

      On May 29, 2019, the defendant was sentenced by the Court to 72 months' imprisonment. As of the date of the instant motion, the defendant had served approximately 63 months of his 72-month sentence.

II. Applicable Law

The statute upon which the defendant relies, 18 U.S.C. § 3582(c)(1)(A)(i), is referred to as the "compassionate release" statute and permits a Court to modify an already imposed sentence upon a showing of "extraordinary and compelling reasons." See United States v. Zullo, 09-CR-64, 2019 WL 7562406, at *1 (D. Vt. Sept. 23, 2019). Prior to the enactment of the First Step Act of 2018, such a modification required a motion by the Bureau of Prisons ("BOP"). Id. (citing Morales v. United States, 353 F. Supp. 2d 204 (D. Mass. 2005)). The First Step Act of 2018 removes the requirement of a motion filed by the BOP and permits defendants to file motions for compassionate release. However, 18 U.S.C. § 3582(c)(1)(A) contains a requirement that a defendant first request that the BOP make a motion for compassionate release and can only bring a motion him or herself if the BOP does not act within 30 days.

The United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and BOP policy have established clear criteria to aid in a court's determination of when compassionate release is appropriate pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See U.S.S.G. § 1B1.13; see also BOP Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)") (available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf). Both the Guidelines and the BOP Program Statement primarily limit compassionate relief to cases of serious illness or impairment, advanced age or a need to care for a child, spouse or registered partner. See id.; see also United States v. Traynor, 04-CR-0582 (NGG), 2009 WL 368927, at *1 n.2 (E.D.N.Y. Feb. 13, 2009). As the Court recognized in Traynor, Congress noted that Section 3582(c)(1) "applies . . . to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." Id. at *1 (citing Senate Report No. 98–225, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3304).

III. A Sentence Modification Is Not Warranted Under the Compassionate Release Statute

The defendant seeks early release and a period of home confinement based on concerns relating to the coronavirus. For the reasons set forth below, the defendant's application does not meet the standard for compassionate relief under 18 U.S.C. § 3582(c)(1)(A)(i), and his request should be denied.

A. The Defendant Has Not Exhausted His Administrative Remedies

In his submission, the defendant concedes that he has failed to exhaust his administrative remedies available to him. Because such exhaustion is mandatory, the court lacks the authority to grant compassionate release at this time.

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. Once such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling

circumstances." Id. § 3582(c)(1)(A)(i). A motion under this provision may be made by either the BOP or a defendant, but in the latter case only "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. Thus, where a compassionate release motion is brought by a defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

Section 3582(c)(1)(A)'s exhaustion requirement is therefore mandatory. It is critical, in this context, to note that Section 3582(c)'s exhaustion requirement is statutory, rather than a judicially-crafted exhaustion requirement that "remain[s] amenable to judge-made exceptions." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016). By significant contrast, statutory exhaustion requirements "stand[] on a different footing." Id. There, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." Id. Thus, where a statute contains mandatory exhaustion language, the only permissible exceptions are those contained in the statute. Id. Here, the plain language of the statute makes clear that a court "may not" modify a sentence unless, as relevant here, the defendant has first "fully exhausted all administrative rights." Cf. Fry v. Napoleon Community Schools, 137 S. Ct. 743, 750 (2017) (statute requiring that certain types of claims "shall be exhausted" is a mandatory exhaustion provision for those types of claims). For this reason, this Court lacks the authority to grant the defendant's motion at this time. See United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). Indeed, as Judge Chen recently held in denying a motion for compassionate release:

> The Court's ruling was predicated, in part, on its finding that the exhaustion of administrative remedies, as set forth in Section 3582(c)(1)(A), is at least a statutory requirement and that Defendant Napout's failure to satisfy this requirement deprived the Court of the authority to grant him a sentencing reduction under Section 3582(c)(1)(A).

United States v. Napout, No. 15-CR 252 (PKC) (E.D.N.Y. April 14, 2020); United States v Davis, No. 96-CR-912 (ERK) (E.D.N.Y. April 14, 2020) ("[T]he issue of exhaustion presents a hurdle I have concluded Mr. Davis cannot surmount, as the cases cited by the U.S. Attorney convincingly demonstrate[.]"); United States v. Resnick, No. 14-CR-810, 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) (granting compassionate relief after finding that the defendant had exhausted his remedies); United States v. Hernandez, No. 19-CR-834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020) (finding that the compassionate release provisions of the First Step Act did not apply because "Mr. Hernandez does not appear to have sought any such relief within the Bureau of Prisons, let alone exhausted his administrative remedies"); United States v. Cohen, No. 18-CR-602 (WHP), 2020 WL 1428778, at *1 (S.D.N.Y. Mar. 24, 2020) ("As the Government points out, he is 'manifestly ineligible' for compassionate release and has not exhausted his administrative remedies."); United States v. Gileno, No. 19-CR-161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, Mr. Gileno has not satisfied the requirement under 18 U.S.C. §

3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence."); United States v. Monzon, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) ("Monzon has not exhausted his administrative remedies. Consequently, the Court cannot grant his motion for sentence reduction."); United States v. Jepsen, 19-CV-73, 2020 WL 1640232, at *3 (D. Conn. Apr. 1, 2020) ("First, the Court finds that Mr. Jepsen's motion is properly before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A) because he exhausted available appeals of the administrative denial of his request for compassionate release."); but see United States v. Zuckerman, No. 16-CR-194, 2020 WL 1659880, at *2 (S.D.N.Y. Apr. 3, 2020) ("[T]he Court holds that Zuckerman's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic."); United States v. Colvin, No.19-CR-179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (finding exceptions to the exhaustion requirement apply); United States v. Perez, No. 17-CR- 513, 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020) (finding that exceptions to the exhaustion requirement apply, emphasizing that the defendant's three week sentence would expire before the exhaustion period ends).

       The defendant cites Washington v. Barr, 925 F.3d 109 (2d Cir. 2019) for the proposition that there may be exceptions to the First Step Act exhaustion requirement. Barr, however, is inapposite in that it involved the invocation of a judge-made exhaustion doctrine. See id. at 116 (stating that the statute in question "does not mandate exhaustion of administrative remedies" but finding that exhaustion requirement was nevertheless appropriate); id. at 118 ("Although not mandated by Congress, [exhaustion] is consistent with congressional intent."). Thus, it was appropriate for the court to consider judge-made exceptions. See Ross, 136 S. Ct. at 1857. This case, on the other hand, involves a mandatory statutory exhaustion requirement that cannot be disregarded.[1]

       In addition to the statutory requirement, there is good reason to allow the BOP its statutory 30-day window before considering a compassionate release application. There are many challenging factors to consider during this pandemic, and BOP should have the

---

[1] As is noted in the Zuckerman, Perez and Colvin cases cited above, Barr states that the exhaustion requirement is not absolute when mandated "by statute or decisional law." Barr, 925 F.3d at 118 (emphasis added) (quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)). McCarthy, like Barr, is another case involving a judge-made exhaustion requirement. See McCarthy, 503 U.S. at 152 ("Because Congress has not required exhaustion of a federal prisoner's Bivens claim, we turn to an evaluation of the individual and institutional interests at stake in this case."). Accordingly, McCarthy provides no support for the notion that exhaustion mandated "by statute" is not absolute. Further, when Barr goes on to discuss three recognized exceptions to exhaustion, it is describing three exceptions recognized in McCarthy in the judge-made context. Accordingly, the Barr decision appears to ignore the critical distinction between statutory and judge-made exhaustion requirements made in Ross.

4

opportunity to assess those factors during the statutorily required review period.  For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.  It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.  It must marshal its resources to care for inmates in the most efficient and beneficial manner possible.  It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.  And it must consider myriad other factors, including the availability of transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).  Judicial review will be all the more effective if it is done after the BOP is given an opportunity to assess the interplay of these various concerns for a given defendant.

> B. A Generalized Fear of COVID-19 Is Not a Basis For Release

The defendant's generalized fear of contracting COVID-19 is insufficient to constitute "extraordinary and compelling reasons" warranting release.  Even if the defendant had exhausted his administrative remedies, the defendant's motion would be without merit.  The defendant, who is 52-years old, has provided no rationale or documentation regarding any personal health history that would make him particularly susceptible to COVID-19.  Instead, the defendant relies solely on his generalized "age and family health history."  See Def. Mot. at 2.  With respect to the defendant's age, the CDC has advised that people aged 65 or older are at "higher risk for severe illness" resulting from the novel corona virus.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

To date, there are 27 confirmed inmate case of COVID-19 at FCI Danbury.  While the government appreciates the need to move vulnerable inmates out of FCI Danbury, this particular defendant meets none of the "high risk" criteria set forth by the BOP for contracting the virus.  Moreover, the BOP is currently implementing national measures to mitigate the spread of COVID-19 within prisons.  See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp.  These measures, which have been implemented at FCI Danbury, include the following:

- Suspension of all social and legal visits:  Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls.  Inmates will be provided additional inmate telephone minutes each month.

- Inmate movement:  All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates:  All newly-arriving Bureau of Prisons ("BOP") inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates

5

- with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- Modified Operations: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, among other modifications specific to each facility.

Furthermore, on April 1, 2020, BOP ordered the implementation of Phase 5 of its COVID-19 Action Plan, and will take the following actions immediately to further mitigate the exposure and spread of COVID-19:

- For a 14-day period, inmates in every institution will be secured in their assigned cells/quarters to decrease the spread of the virus. This modification is based on health concerns, not disruptive inmate behavior.

- During this time, to the extent practicable, inmates should still have access to programs and services that are offered under normal operating procedures, such as mental health treatment and education.

- The facilities will coordinate with the United States Marshals Service ("USMS") to significantly decrease incoming movement during this time.

- Limited group gathering will be afforded to the extent practical to facilitate commissary, laundry, showers, telephone, and Trust Fund Limited Inmate Computer System ("TRULINCS") access.

See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp. After 14 days, the BOP will make a determination as to whether or not to return to modified operations. Id. While the BOP and the government recognize the seriousness of COVID-19, the risk of potential exposure to COVID-19 in a BOP facility cannot alone form the basis to release a prisoner.

Consequently, the defendant's assertion that he is at risk of contracting COVID-19 at FCI Danbury does not provide an "extraordinary and compelling reason" to modify his sentence. His age and family health history do not put the defendant, individually, in an extraordinary and compelling situation warranting his temporary release. Indeed, a growing body of decisions in Circuit Courts of Appeal, this district and the Southern District of New York support the conclusion that release is not warranted for inmates similarly situated to—and, in some instances, at greater risk of health issues—than the defendant. See, e.g., Raia, No. 20-1033 (3d Cir. 2020) (denying defendant's application for compassionate release and holding that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and

6

professional efforts to curtail the virus's spread"); United States v. Flores, No. 15-CR-152 (RRM) (E.D.N.Y. Apr. 12, 2020) (denying compassionate release, in part, on the defendant's failure to establish that he is at "high risk" to contract the virus); United States v. Agosto, et al., 17-CR-390 (RJD) (E.D.N.Y. Apr. 2, 2020) (denying bail application for inmate detained at MDC awaiting sentencing on a drug trafficking charge that carries no mandatory minimum sentence who claimed increased susceptibility to the virus due to severe allergies and hypothyroidism); United States v. Scorcia, No. 19-CR-442 (ILG) (E.D.N.Y. Mar. 27, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release defendant based on COVID-19 pandemic for 54-year-old who cited poor health and family history and claimed restrictions at MDC interfered with ability to prepare a defense); United States v. Bradley, 19-CR-632 (GBD), ECF No. 25 (S.D.N.Y. Mar. 25, 2020) (denying bail application for inmate detained at MCC on controlled substances and firearm charges who had recently experienced a stroke and had high blood pressure); United States v. Rivera, 20-CR-6 (JSR), Mar. 25, 2020 Order (S.D.N.Y.) (denying bail application for inmate detained in MCC on controlled substance charge who had a childhood history of asthma); United States v. White, 19-CR-536 (KC), Mar. 25, 2020 Order (S.D.N.Y.) (denying bail application for inmate detained at Valhalla on controlled substance and Hobbs Act charges with history of whooping cough); United States v. Acosta, 19-CR-848 (NRB), ECF No. 14 (S.D.N.Y. Mar. 25, 2020) (denying bail application for inmate detained in MCC that "reli[ed] mainly on a form letter proffering general reasons to release inmates because of the spread of the COVID-19 virus); United States v. Lipsky, No. 19-CR-203 (NGG) (E.D.N.Y. Mar. 24, 2020) (declining to release defendant, previously detained as a danger to the community, based on general risks of COVID-19 pandemic); United States v. Amato, No. 19-CR-442 (ILG), ECF No. 237 (E.D.N.Y. Mar. 20, 2020) (ruling that court had already determined defendant was a danger to the community and declining to release defendant based on COVID-19 pandemic for 61-year old with asthma); United States v. Hamilton, No. 19-CR-54 (NGG) 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (declining to release defendant charged with two counts of murder while engaged in narcotics trafficking who had sought release based due to the COVID-19 pandemic based on defendant's "advanced age and medical conditions," finding that defendant had not "met his burden to rebut the presumption of danger to the community that attaches based on" the charged acts of violence).

Although the BOP may find that the defendant meets the criteria for compassionate release after its review, based on the information known to the government at this time, it does not appear that the defendant's situation offers the kind of "extraordinary and compelling" reasons to justify release.

While the BOP and the government recognize the seriousness of the coronavirus, the risk of potential exposure to the coronavirus in a BOP facility cannot alone form the basis to release a prisoner who makes a motion for release, particularly in a case such as this one where the defendant's risk factors cannot be described as "extraordinary and compelling."

IV. <u>Conclusion</u>

      For the reasons set forth above, the coronavirus pandemic does not provide a reason to grant the defendant's compassionate release, and his motion for a modification of his sentence should be denied.

      Respectfully submitted,

      RICHARD P. DONOGHUE
      United States Attorney

By:   /s/
      Michael T. Keilty
      Assistant U.S. Attorney
      (718) 254-7528

cc:   Lou Freeman, Esq. (by e-mail and ECF)
      Clerk of Court (by ECF)