# FREEMAN, NOOTER & GINSBERG
**ATTORNEYS AT LAW**

| | |
|---|---|
| LOUIS M. FREEMAN | 75 MAIDEN LANE |
| THOMAS H. NOOTER | SUITE 503 |
| LEE A. GINSBERG | NEW YORK, N.Y. 10038 |
| _____ | _____ |
| | ___ |
| NADJIA LIMANI | (212) 608-0808 |
| OF COUNSEL | TELECOPIER (212) 962-9696 |
| _____ | E-MAIL: FNGLAW@AOL.COM |
| CHARLENE RAMOS | WWW.FNGLAW.COM |
| OFFICE MANAGER | |

May 12, 2020

BY ECF
Honorable Kiyo A. Matsumoto
United States District Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Eric Sedge*
16 CR 537 (KAM)

Dear Judge Matsumoto:

On behalf of Eric Sedge, we write to renew our April 15, 2020 motion for a reduction of sentence, pursuant to 18 U.S.C. §3582(c)(1)(A), seeking emergency relief from the dangerous health conditions under which he is being detained at FCI Danbury.

On April 10, 2020 undersigned counsel wrote to the Warden of FCI Danbury requesting the release of Mr. Sedge to home confinement pursuant to 18 U.S.C. § 3624 via electronic mail. On April 15, 2020, we filed an emergency motion for compassionate release. Pursuant to the First Step Act of 2018, a sentencing court may reduce the term of imprisonment,

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

On April 16, 2020, at the Court's direction, we supplemented our motion to inform the Court of the specifics of Mr. Sedge's medical history. On April 20, 2020, we again supplemented our motion with information from Mr. Sedge's cardiologist. On April 22, 2020, Your Honor requested the following information be provided by the Government:

> (1) FCI Danbury's current number of COVID-19 infections and deaths as of 4/24;
> (2) a detailed description of FCI Danbury's actual ability, or lack thereof, to
> conduct tests and a administer a fully isolated quarantine of an inmate who has or
> was exposed to COVID-19 (including describing any procedures in place for
> quarantining during meals, showers, commissary, medical visits, and other
> communal interactions); and (3) whether the Bureau of Prisons has received and
> intends to respond by or before May 10th, to Mr. Sedge's April 10, 2020 request
> for home confinement.

D.E. dated April 22, 2020.

On April 24, 2020, the Government submitted a letter to the Court, which contained the following information:

- As of April 24, 2020, FCI Danbury currently has 20 inmates on isolation status due to potential COVID-19 infection; 15 of those inmates are confirmed positive for the virus.
- As of April 24, 2020, there has been one death at FCI Danbury related to COVID-19.
- FCI Danbury has been able to test all inmates showing symptoms of the COVID-19 virus.
- FCI Danbury has established an isolation unit for positive and suspected positive inmates (those inmates awaiting results).
- FCI Danbury has established a quarantine unit for inmates awaiting home confinement approval.
- All inmates at FCI Danbury are confined to their assigned housing unit, required to wear masks and subject to daily temperature checks.
- All inmates at FCI Danbury are currently fed in their units.
- All inmates at FCI Danbury attend sick call in their unit.
- A daily cleaning schedule has been established at FCI Danbury for shower and living areas, with cleaning supplies delivered each day.

> Finally, FCI Danbury has received the defendant's April 10, 2020 request for home confinement and plans to respond to the defendant's request no later than May 10, 2020.

D.E. 41, 1-2.

As of today's date, neither Mr. Sedge nor undersigned counsel has received a response to our April 10, 2020 request. Accordingly, we write to renew our April 15, 2020 motion and provide the Court with some additional information in support of our motion. As confirmed by Dr. Shayani's April 20, 2020 letter, Mr. Sedge suffers from hypertension, hyperlipidemia and coronary artery disease.

> Someone with pre-existing heart disease who becomes ill with COVID-19 may
> suffer a heart attack or develop congestive heart failure. This rapid worsening of
> cardiovascular health is likely due to a combination of the severe viral illness and
> its increased demands on the heart (fever causes rapid heart rate, for example),
> compounded by low oxygen levels due to pneumonia and increased propensity for
> blood clot formation…. About 10% of patients with pre-existing cardiovascular
> disease (CVD) who contract COVID-19 will die, compared with only 1% of
> patients who are otherwise healthy.

Dara K. Lee Lewis, M.D., Harvard Health Blog, *How does cardiovascular disease increase the risk of severe illness and death from COVID-19?*, https://www.health.harvard.edu/blog/how-does-cardiovascular-disease-increase-the-risk-of-severe-illness-and-death-from-covid-19-2020040219401. Because his pre-existing health conditions place him at a significantly greater risk of suffering acutely from COVID-19 and the conditions of confinement further expose him to increased risk of contracting the virus, there are extraordinary and compelling reasons warranting his early release. Mr. Sedge currently has a projected release date of March 7, 2021. We remind the Court that Mr. Sedge has not been able to complete RDAP program due to the program being shut down in February due to the disciplinary issues of other inmates and accordingly could not receive the six-month credit for completing the program, which would have made his half-way house date August 4, 2020 (the date he would have completed RDAP).[1]

According to the BOP, as of today's date, there are 27 inmates and 7 staff members currently testing positive for COVID-19 at FCI Danbury. There are also 48 inmates and 50 staff members who have recovered from the virus. On April 18, 2020, inmate Anthony Gentile died after contracting the virus. Mr. Sedge reports that Mr. Gentile worked in the kitchen prior to reporting his sickness to FCI Danbury on April 9, 2020. As of today's date, 23 inmates have been released from Mr. Sedge's unit since the COVID-19 lockdown began; 68 inmates remain.

The BOP is not releasing data regarding how many tests have been given at each institution or how many inmates who have tested positive for COVID-19 have since been released from each institution. As long as the BOP fails to test all inmates and staff,[2] including symptomatic and asymptomatic individuals, the numbers of inmates and staff that test positive will remain low. These numbers are dangerously deceiving. One may be asymptomatic and be infected and infect others. Indeed, Dr. Anthony Fauci stated that perhaps as many as fifty percent of those infected are asymptomatic. *See,* "*As many as half of those with the coronavirus could be asymptomatic, Fauci says*," The New York Times (April 5, 2020), https://www.nytimes.com/2020/04/05/world/coronavirus-live-news-updates.html#link-327dd1e4.

In *United States v. Sawicz*, 08 CR 287 (ARR), Judge Ross found that the "COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension, justifies waiver here." D.E. 66 at 4. The Court further found that "the risk of serious illness or death that he faces in prison constitutes an extraordinary and compelling reason militating in favor of his release." *Id*. at 5-6.

Given the current conditions at FCI Danbury and Mr. Sedge's pre-existing health conditions (which make him vulnerable to serious illness should he contract the virus), we respectfully request his immediate release from FCI Danbury with a six-month period of home confinement as a condition of supervised release. Because Mr. Sedge has been quarantined in

---

[1] We also remind the Court that Mr. Sedge did not receive credit for all of the time he was incarcerated in Nassau County relating to the charges for which he pled guilty before this Court. More specifically, as referenced in our April 15, 2020 motion, he did not receive credit for the time served from April 1, 2016 through June 1, 2016.

[2] The BOP has indicated that they are increasing testing on symptomatic and asymptomatic individuals using the "Abbott ID NOW instrument for Rapid RNA testing at select facilities experiencing widespread transmission." Bureau of Prisons, *BOP Expands COVID-19 Testing* (April 23, 2020), https://www.bop.gov/resources/news/pdfs/20200423_press_release_covid19_testing.pdf. However, the BOP is limiting this increased testing to "facilities experiencing sustained transmission, and the additional test kits will be placed first at quarantine and pre-trial detention centers." Bureau of Prisons, *Bureau of Prisons To Expand Rapid Testing Capabilities* (May 7, 2020), https://www.bop.gov/ resources/news/pdfs/20200507_press_release_expanding_rapid_ testing.pdf.

his unit with temperature checks every day, we ask that he be able to spend the 14-day quarantine at his parent's residence where he will have his own room. As noted in our April 15, 2020 motion, such a decision would be consistent with the 3553(a) sentencing factors and applicable policy statements issued by the Sentencing Commission. Mr. Sedge has served the majority of a sentence that balances the seriousness of his criminal conduct with his acceptance of responsibility. His excellent record while incarcerated, which we highlighted when Mr. Sedge was sentenced,[3] reflects an individual who is not a danger to the community.

                                            Sincerely,

                                            /s/ Louis M. Freeman
                                            Louis M. Freeman

cc: AUSA Michael Kielty

---

[3] To remind the Court, while at the MDC, Mr. Sedge obtained many course certificates, including three from the Columbia University Center of Justice program, assisted inmates as a tutor, taught several certificate courses, and worked in the kitchen preparing meals for both inmates and staff. He has had no disciplinary issues since his arrest on March 13, 2016.