```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
UNITED STATES OF AMERICA,


        -against-                          MEMORANDUM AND ORDER

                                           16-cr-537(KAM)

ERIC SEDGE, Defendant.

---------------------------------------X
```

**MATSUMOTO, United States District Judge:**

Defendant Eric Sedge, a fifty-two year old non-violent offender who has served 64 months of a 72 month sentence,[1] moves for temporary or permanent "compassionate release" from prison pursuant to 18 U.S.C. § 3582(c)(1)(A) and the FIRST STEP Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in light of the COVID-19 pandemic, his medical conditions that place him at greater risk of suffering life threatening complications if he contracts COVID-19, and the presence of COVID-19 at FCI Danbury, where Mr. Sedge is incarcerated. *See* Emergency Motion for

---

[1] Defendant was sentenced to 72 months, but the court recognizes that he could have received a 6 month reduction of his overall sentence, making his total sentence 66 months, with three months' credit given for Mr. Sedge's participation in the Residential Drug Abuse Program ("RDAP") from November 4, 2019 to February 2020, which he could not complete to receive a full six-month credit in August 2020 due to an unrelated fight between inmates that resulted in a suspension of RDAP at FCI Danbury. Moreover, Mr. Sedge also argues for three months' credit for time served while incarcerated in Nassau County from March 13, 2016 through June 1, 2016, which time was not already credited against any state sentence because he was charged for violations of federal law. *See* Def. Memo at 7.

1

Compassionate Release, ECF No. 36 ("Def. Mem."). The probation department and government oppose the defendant's motion. *See* Government's Opposition to Emergency Motion for Compassionate Release, ECF No. 37 ("Gvt. Opp."); Probation Dep't Opp., ECF No. 38.

On April 22, 2020, the court ordered the government to provide information regarding: (1) FCI Danbury's current number of COVID-19 infections and deaths as of April 24, 2020; (2) a detailed description of FCI Danbury's actual ability, or lack thereof, to conduct tests and a administer a fully isolated quarantine of an inmate who has or was exposed to COVID-19 (including describing any procedures in place for quarantining during meals, showers, commissary, medical visits, and other communal interactions); and (3) whether the Bureau of Prisons has received and intends to respond within thirty days, or by May 10, 2020, to Mr. Sedge's April 10, 2020 request for home confinement. The government responded with a letter on April 24, 2020 confirming that the warden of FCI Danbury would respond to defendant's April 10, 2020 request for compassionate release by May 10, 2020. *See* Gv't Letter Regarding Conditions at FCI Danbury, ECF No. 41. To the court's knowledge, the warden of FCI Danbury has not responded to defendant's request as of the date of this order.

For the following reasons, the court GRANTS defendant's motion and orders the immediate release of Mr. Sedge, with the conditions stated below.

I. Background

The court assumes familiarity with the underlying facts of this case. In brief, Defendant Sedge was discovered asleep in his car in possession of 2 pounds of methamphetamine, $15,508, and a scale. At Mr. Sedge's sentencing, the court considered both his prior offenses, and his extensive community support from his children, ex-wife, friends, and parents. Mr. Sedge specifically requested a sentence of 72-months so that he could enter prison and utilize the educational and treatment resources of the BOP, like the RDAP program, to combat his addiction to using and selling methamphetamines. While at MDC and in prison at FCI Danbury, Mr. Sedge has been a model inmate. He has successfully participated in work and education programs and obtained course credit, including from Columbia University's Center for Justice. Def. Memo at 2.

I. Standard of Review

18 U.S.C. § 3582(c)(1)(A)(i), the so-called "compassionate release" statute, creates an exception to the general prohibition against modification of "a term of imprisonment once it has been imposed,' 18 U.S.C. § 3582(c); but the rule of finality is subject to a few narrow exceptions." *Freeman v.*

3

*United States*, 564 U.S. 522, 526 (2011). Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment upon a finding that "extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

As a threshold matter, upon a finding of "extraordinary and compelling circumstances," this court has authority to reduce defendant's sentence, as over 30 days have passed since Mr. Sedge filed his April 10, 2020 petition with the BOP. The court may modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier...." *Id*. "If the BOP does not act favorably on the defendant's request after 30 days, the defendant is excused from the exhaustion requirement and may bring his application to the Court. If the BOP denies the defendant's application in fewer than 30 days, then the defendant may immediately apply to the Court." *United States v. Woodson*, No. 18-CR-845 (PKC), 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020). Further, "§ 3582(c)(1)(A) does not contain an exhaustion requirement in the traditional sense. That is, the

4

statute does not necessarily require the moving defendant to fully litigate his claim before the agency (*i.e.*, the BOP) before bringing his petition to court. Rather, it requires the defendant <u>either</u> to exhaust administrative remedies <u>or</u> simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." *United States v. Haney*, No. 19-CR-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020); *see also United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020); *see also United States v. Russo*, No. 16-CR-441 (LJL), 2020 WL 1862294, at 3-4 (S.D.N.Y. Apr. 14, 2020).[2]

The relevant policy statement here is U.S.S.G. § 1B1.13, which allows the court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant the reduction,"

---

[2] This court is sensitive to the statutory nature of this exhaustion requirement. However, the lower courts are divided on whether this is a traditional exhaustion requirement, or a non-jurisdictional claim-processing rule that has no effect on the adjudicatory capacity of the courts, that instead controls who may move for compassionate release and when. See *Scparta*, 2020 WL 1910481, at *4 (citing *Haney*, 2020 WL 1821988, at *2.). "Congress cannot have intended the 30-day waiting period of § 3582(c)(1)(A) to rigidly apply in the highly unusual situation in which the nation finds itself today." *Haney*, 2020 WL 1821988, at *3. Here, Mr. Sedge's application has yet to be decided by the warden. Mr. Sedge presented his application for release to the warden on April 10, 2020, and despite assurances by the government to this court that the warden would respond by May 10, 2020, the warden has not yet responded. *See* ECF No. 41 at 1-2. Though the court is aware of the mass of applications received by the BOP in the face of this pandemic, the fact remains that the warden has not acted on petitions while prisoners languish in dangerous conditions.

*But see, e.g.*, *United States v. Bolino*, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020)(finding that "[i]f the prison warden denies [an inmate's] request, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure.").

*id.* § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," *id.* § 1B1.13(2); and "the reduction is consistent with this policy statement," *id.* § 1B1.13(3). Additionally, in considering any sentence reduction, the court must apply the 3553(a) factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), 3583(d)(1).

## II. Discussion

Defendant has demonstrated "extraordinary and compelling" circumstances that warrant a reduction of his sentence and his release based on: (1) the rapid spread of COVID-19 at FCI Danbury; (2) defendant's demonstrated history of hypertension, hyperlipidemia, and coronary artery disease which places him at an increased risk for life threatening complications from COVID-19; and (3) defendant's satisfaction of the § 3553(a) factors.

6

As of the date of this Memorandum and Order, the BOP's official tally of COVID-19 infections at FCI Danbury is 27 inmates and seven staff. *See* www.bop.gov/coronavirus/index.jsp (last visited on May 13, 2020, at 1:00 p.m.). However, these numbers are in dispute, and may be much higher. Defense counsel alleges that "[t]here are also 48 inmates and 50 staff members who have recovered from the virus." Mot. to Renew App. for Comp. Release at 3, ECF No. 42. A public inquiry by the U.S. Senators from Connecticut, Richard Blumenthal and Christopher Murphy, sent to BOP Director Richard Carvajal on April 13, 2020, stated that there were "over 60 inmates and over 50 staff who have tested positive" at FCI Danbury. Letter from Senators Blumenthal and Murphy to BOP Director Carvajal, dated April 13, 2020, available at https://www.murphy.senate.gov/newsroom/press-releases/murphy-blumenthal-demand-answers-regarding-covid-19-outbreak-at-fci-danbury (last visited on May 12, 2020 at 3:00 p.m.). Further, FCI Danbury is among the three institutions cited by the Attorney General in his April 3, 2020 memorandum ordering the BOP to increase the use of home confinement in the face of the COVID-19 pandemic. *See* Attorney General Memorandum dated April 3, 2020, available at https://www.justice.gov/file/1266661/download (last visited on May 12, 2020 at 3:15 p.m.). One FCI Danbury inmate, Anthony David Gentile, has tragically died from the virus. It is clear

7

from the spread of the infection, the A.G.'s memo, and the tragic death of an inmate, that at the present time FCI Danbury has experienced difficulty containing COVID-19 and that prisoners with particular medical conditions are likely to be more susceptible to developing serious complications from COVID-19.

Defendant has demonstrated that he has current medical conditions that place him at an increased risk for developing serious, potentially life-threatening complications from the virus. "[T]he risk of serious illness or death that [defendant] faces in prison constitutes an extraordinary and compelling reason militating in favor of his release." *United States v. Sawicz*, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020)(granting compassionate release for a prisoner at FCI Danbury.). The Attorney General identified six criteria in his March 26, 2020 memorandum to the Director of the Bureau of Prisons that would qualify an inmate for release to home confinement. *See* Attorney General Memorandum dated March 26, 2020, available at https://www.justice.gov/file/1262731/download ("A.G. Memo."). The first criterion is the age and vulnerability of the inmate. *Id.* The CDC has issued guidelines identifying people 65 or older as at "higher risk for severe illness" resulting from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. Though Mr. Sedge is 52

8

years old, he suffers from his own and an extensive family history of heart and respiratory issues. Def. Memo. at 2. His doctor has advised that Mr. Sedge is an appropriate candidate for medical release given his hypertension, hyperlipidemia and coronary artery disease, family medical history, and the rapid rise of COVID-19 infections at FCI Danbury. *See* Letter from Dr. Steven Shayani, ECF No. 40. Given that the defendant is over 50 and has demonstrated existing medical conditions that would place him into a high-risk category including hypertension, hyperlipidemia, and coronary artery disease, defendant has demonstrated that he is at a higher risk for suffering life threatening complications from COVID-19. *Id*.

Though the Attorney General's memo is not binding on this court, a reduction in the defendant's sentence also meets the 3553(a) sentencing factors. First, Mr. Sedge pled guilty to possessing and distributing narcotics, and promptly accepted responsibility. While in prison, he has participated in the RDAP program, completed coursework through Columbia University and been an otherwise exemplary inmate. Second, Mr. Sedge has served a majority of his sentence, and will continue serving his sentence and be on home confinement with electronic monitoring, and will quarantine for two weeks in his room while at his parents' home, further deterring future criminal conduct. Third, the public will be protected from any further crimes by

9

the conditions of release. Fourth, defendant has received counseling, educational training while in prison through the Columbia University and other programs while at MDC and FCI Danbury, and will receive the most effective medical care best suited to his medical conditions while under home confinement during this COVID-19 pandemic.

### III. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). It is hereby ordered that:

1. The motion by defendant ERIC SEDGE, Reg. No. 89379-053, for compassionate release is granted;

2. The defendant's prison sentence be and hereby is reduced to time served;

3. The warden of FCI DANBURY shall forthwith release from custody defendant ERIC SEDGE;

4. Defendant ERIC SEDGE shall not spend 14 days in quarantine at FCI DANBURY prior to his release, but shall be released immediately upon the institution's receipt of this Order, and shall instead spend 14 days in self-quarantine at his parent's residence at the address identified in his pre-sentence report (the "Residence");

5. As previously ordered ERIC SEDGE shall serve five years of supervised release, with home confinement and location

10

monitoring for a period of 6 months in lieu of his remaining time in BOP custody;

6. Defendant ERIC SEDGE shall abide by all the terms and conditions of supervised release that were previously imposed on him and are memorialized in his judgment of conviction;

7. Upon his release from FCI DANBURY, defendant ERIC SEDGE shall proceed immediately to the Residence where he shall reside during his term of home confinement and supervised release;

8. Defendant ERIC SEDGE must notify the Probation Department for the Eastern District of New York upon his arrival at the Residence, and is directed to follow the instructions of the assigned probation officer, as well as the conditions of supervised release imposed at the time of his sentence;

9. For a period of 6 months from the date of his release from prison, defendant ERIC SEDGE shall be under 24-hour home confinement to be enforced by location monitoring, using specific technology to be determined by the Probation Department. The defendant may only leave the Residence for necessary medical services with advanced notification, and approval if time permits, from the Probation Department. All other leave from the Residence must be submitted through defense counsel for the court's approval;

10. In addition, for the first 14 days of his term of home confinement, defendant ERIC SEDGE shall remain in quarantine at

11

the Residence, and shall be allowed no contact with any other person other than his parents, who live in the Residence, taking great care to isolate himself and observe all CDC guidance during this time as his parents are in their seventies, except for medical personnel in case of emergency;

11. Upon entry of this Order, defense counsel shall immediately contact Probation Officer Michelle B. Malko and coordinate with her to facilitate enforcement of the defendant's location monitoring and other release conditions including online mental health and substance abuse treatment if feasible; and

12. Although the court assumes that defense counsel will notify the BOP of the issuance of this order, the court directs that the United States Attorney's Office for the Eastern District of New York formally notify the BOP so that this order can be put into effect as quickly as possible.

**SO ORDERED.**

Dated:   May 13, 2020
         Brooklyn, New York

                                            _____/s/_____
                                            **HON. KIYO A. MATSUMOTO**
                                            United States District Judge
                                            Eastern District of New York